**UNITED STATES of America**

v.

**MILLER, William G., Appellant.**

**No. 79–2445.**

United States Court of Appeals,
Third Circuit.

Argued March 20, 1980.
Decided June 26, 1980.

---

Herbert L. Zuckerman (argued), Zuckerman, Aronson, & Horn, Newark, N. J., for appellant.

Robert J. Del Tufo, U. S. Atty., Samuel A. Alito, Jr., Asst. U. S. Atty. (argued), Newark, N. J., for the U. S.

Before SEITZ, Chief Judge, and WEIS and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

The defendant in this criminal prosecution for violations of the Internal Revenue Code appeals from a pretrial order disqualifying the law firm that had been representing him. The district court disqualified the firm because one of its partners had been an assistant United States attorney, with general responsibilities for tax matters, while the case was under investigation in the U. S. Attorney's office. This court has jurisdiction under 28 U.S.C. § 1291 (1976), because the district court's disqualification order is a final decision on a collateral issue. *IBM v. Levin*, 579 F.2d 271, 278 (3d Cir. 1978).

### I.

The appellant, William G. Miller, is charged with four counts of attempted income tax evasion, 26 U.S.C. § 7201 (1976), and seven counts of making and signing false income tax returns, 26 U.S.C. § 7206(1) (1976). For his legal counsel, Miller hired the Newark, New Jersey, law firm of Zuckerman, Aronson, & Horn. One of the firm's partners, Lawrence S. Horn, had been an assistant U. S. attorney in the District of New Jersey for several years prior to joining the firm.

The government moved to disqualify the Zuckerman firm on the ground, *inter alia*, that Horn had participated in the government's preparations of its case against Miller while an assistant U. S. attorney. It relied on DR 9–101(B) of the ABA's Code of Professional Responsibility: "A lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee."

The record then before the district court showed that much of the government's preparation occurred while Horn was with the U. S. Attorney. The case was prepared within the U. S. Attorney's office by a unit of the Department of Justice known as the Organized Crime and Racketeering Section, Newark Strike Force. Horn was not a member of the Strike Force. However, the Strike Force attorney who was assigned to the Miller case, Michael B. Himmel, submitted an affidavit in which he recalled discussing with Horn a legal question relevant to the case. The issue was "the difference between specific item and net worth theories of income tax prosecution." Himmel could not recall whether he had discussed any of the specific facts of the Miller case with Horn. Horn stated in response that he could not recall this discussion but that he was sure that he had never discussed the facts of the Miller case with anyone in the U. S. Attorney's office.

The district court initially denied the motion. Relying on an advisory opinion issued by the Supreme Court of New Jersey, *In re Advisory Opinion on Professional Ethics no. 361*, 77 N.J. 199, 390 A.2d 118 (1978), which applied DR 9–101(B) to the situation of a former prosecutor, the district court ruled that a prosecutor could be disqualified under DR 9–101(B) only if as a prosecutor he obtained actual knowledge of the case or held responsibility over the subject matter. Horn's conversation with Himmel, according to the district court, showed neither fact.

The government moved for reconsideration, directing its arguments this time to New Jersey's interpretation of the disciplinary rule. The government submitted evidence to show that the Miller case fit within the subject matter of Horn's former responsibilities. An affidavit by the U. S. Attorney, Robert J. Del Tufo, described these responsibilities. Horn was the resident expert on tax law. He handled most of the criminal tax prosecutions in the office and advised other prosecutors on tax issues. The U. S. Attorney expected his assistants to consult with Horn on any tax questions. The affidavit also stated that when Horn joined the Zuckerman firm, the firm announced that he had been "Chief of the Criminal Tax Fraud Unit within the United States Attorney's Office."

The U. S. Attorney's affidavit also discounted the significance of the distinction between cases assigned to Strike Force attorneys and cases assigned to regular assist-

ant U. S. attorneys. The U. S. Attorney has ultimate responsibility for cases in both categories. Attorneys in the office freely exchange information and assume responsibilities without regard to this distinction. On tax cases assigned to Strike Force attorneys, Horn often provided the U. S. Attorney with evaluations and assisted the Strike Force attorneys with their preparations.

Horn testified that his responsibilities in tax cases were informal, nothing more than a specialization and a pattern of assignments and consultations. He stressed that he had no general responsibility for supervising tax cases. He repeated that he had no direct involvement in the preparation of the case against Miller.

After considering this additional evidence, the district court granted the government's motion. The court again relied on the interpretation of DR 9–101(B) in the advisory opinion of the Supreme Court of New Jersey. That interpretation holds that a prosecutor's "responsibility, whether exercised or not, over the subject matter" of a case pending in his office precludes him from a subsequent appearance as a private defense attorney in the case. *In re Advisory Opinion, supra,* 390 A.2d at 120. The district court held that the present case fell within the dictates of this rule because Horn had "some advisory responsibility" over criminal tax matters. Consequently, the court disqualified the entire Zuckerman firm.

## II.

 Supervision of the professional conduct of attorneys practicing in a federal court is a matter of federal law. *IBM v. Levin,* 579 F.2d 271, 279 n. 2 (3d Cir. 1978). We face an initial issue, therefore, of the correctness of the district court's reliance on an opinion of a state supreme court.

The basis for the district court's reliance on *In re Advisory Opinion* was its Local Rule 6:

The Disciplinary Rules of the Code of Professional Responsibility of the American Bar Association *as amended by the Supreme Court of New Jersey* . . . shall govern the conduct of . . . the members of the Bar admitted to practice in this Court.

D.N.J.Gen.R. 6 (emphasis added). The Supreme Court of New Jersey has not amended DR 9–101(B), the disciplinary rule applied in this case. *See* Rules Governing the Courts of the State of New Jersey 142 (West 1979). However, *In re Advisory Opinion, supra,* interpreted DR 9–101(B) to impose significantly greater restrictions on former prosecutors than would be required under the ABA's interpretation of the rule. *See* ABA Comm. on Ethics and Professional Responsibility, Formal Opinion 342, at 9 (1975). *See also United States v. Standard Oil Co.,* 136 F.Supp. 345 (S.D.N.Y.1955). By relying on *In re Advisory Opinion,* the district court read its Local Rule 6 to incorporate not only New Jersey's published set of disciplinary rules but also New Jersey law on the interpretation of these rules.[1]

 We find no error in the district court's reading of Local Rule 6. A court of appeals will grant substantial deference to a district court in the interpretation and application of local district court rules. *See Hawes v. Club Ecuestre El Commandante,* 535 F.2d 140, 143–44 (1st Cir. 1976); *Lance, Inc. v. Dewco Services, Inc.,* 422 F.2d 778, 783–84 (9th Cir. 1970). Incorporation of the body of New Jersey law on professional ethics, including interpretations of disciplinary rules, serves at least two legitimate purposes: It allows the district court to use the possibly greater facilities of the state to investigate the ethical standards and problems of local practitioners. It also avoids the detriment to the public's confidence in the integrity of the bar that might result from courts in the same state enforcing different ethical norms. *See In re Abrams,* 521 F.2d 1094, 1106 (3d Cir.) (Rosenn, J.,

---

1. Three other districts in this circuit have adopted or proposed rules with similar language. M.D.Pa.R. 201.15(b); W.D.Pa.R. 22(a); D.Del.R. 8.2(D)(2) (proposed). We offer no

views on whether these rules would be interpreted in the same manner. Only one district has adopted the ABA standards without state amendments. E.D.Pa.R. 11.

concurring), *cert. denied*, 423 U.S. 1038, 96 S.Ct. 574, 46 L.Ed.2d 413 (1975).

### III.

■ Before considering the merits of this appeal, we must review the principles governing our scope of review. The district court's power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before it. *Richardson v. Hamilton International Corp.*, 469 F.2d 1382, 1385–86 (3d Cir. 1972), *cert. denied*, 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973); *E.F. Hutton & Co. v. Brown*, 305 F.Supp. 371, 376–77 (S.D.Tex.1969). As a general rule, the exercise of this authority is committed to the sound discretion of the district court and will be overturned on appeal only for an abuse of this discretion. *Greene v. Singer Co.*, 461 F.2d 242 (3d Cir.), *cert. denied*, 409 U.S. 848, 93 S.Ct. 54, 34 L.Ed.2d 89 (1972).

This general rule is subject to one major exception. We have not confined our review to the abuse of discretion standard on issues of whether an ABA disciplinary rule prohibits certain professional conduct. Such issues "leave little leeway for the exercise of discretion." *American Roller Co. v. Budinger*, 513 F.2d 982, 985 n. 3 (3d Cir. 1975). We have approached these issues as questions of law subject to plenary review. *IBM v. Levin*, 579 F.2d 271, 279 (3d Cir. 1978).

In this case, the district court interpreted DR 9–101(B) to prohibit certain professional conduct. Its interpretation was not an exercise of discretion. However, in this case plenary review on appeal assumes a particular form. Because the district court relied on New Jersey law for its interpretation, it was bound by a controlling case of the Supreme Court of New Jersey. *See In re Abrams*, 521 F.2d 1094, 1102–03 (3d Cir.) (in banc), *cert. denied*, 423 U.S. 1038, 96 S.Ct. 574, 46 L.Ed.2d 413 (1975). On appeal, our review of this issue is directed to a determination of whether the district court correctly read state law.

However, the foregoing discussion concerns only the district court's interpretation of a disciplinary rule, not the court's use of disqualification as a sanction. Although disqualification ordinarily is the result of a finding that a disciplinary rule prohibits an attorney's appearance in a case, disqualification never is automatic. *See Church of Scientology v. McLean*, 615 F.2d 691, 693 (5th Cir. 1980); *Central Milk Producer's Coop. v. Sentry Food Stores, Inc.*, 573 F.2d 988, 991 (8th Cir. 1978); *International Electronics Corp. v. Flanzer*, 527 F.2d 1288, 1293 (2d Cir. 1975). We have noted that the district court "has a wide discretion in framing its sanctions to be just and fair to all parties involved." *IBM v. Levin*, 579 F.2d 271, 279 (3d Cir. 1978). On an issue of the district court's use of the disqualification sanction, the general rule of appellate review only for abuse of discretion applies. *See Kroungold v. Triester*, 521 F.2d 763 (3d Cir. 1975).

■ Commitment of this matter to the district court's discretion means that the court should disqualify an attorney only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule. It should consider the ends that the disciplinary rule is designed to serve and any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions. *See United States ex rel. Sheldon Electric Co. v. Blackhawk Heating & Plumbing Co.*, 423 F.Supp. 486 (S.D.N.Y.1976); *Baglini v. Pullman, Inc.*, 412 F.Supp. 1060 (E.D.Pa.1976), *affirmed*, 547 F.2d 1158 (3d Cir. 1977).

In summary, we must consider two questions on the merits of this appeal. First, whether DR 9–101(B), as interpreted under New Jersey law, prohibits Horn's appearance on behalf of the appellant. Second, whether the district court abused its discretion in enforcing this disciplinary rule with a disqualification of Horn and his law firm.

### IV.

■ We shall consider appellant's arguments first with respect to Horn, the former assistant U.S. attorney.

The district court based its application of DR 9–101(B) on the following language of the Supreme Court of New Jersey: "In addition to actual knowledge, responsibility, whether exercised or not, over the subject matter is automatically disenabling." *In re Advisory Opinion, supra*, 390 A.2d at 120. The phrase "whether exercised or not" indicates that the supreme court intended DR 9–101(B) to apply even when the attorney had no active or direct participation in a case while a prosecutor. The court specifically noted its difference on this point with the ABA's Committee on Ethics and Professional Responsibility. *Id.*, 390 A.2d at 121.

Appellant contends that *In re Advisory Opinion* was referring only to "supervisory" responsibility and not to the type of "advisory" responsibility that Horn possessed. We find no textual basis for this distinction in the advisory opinion. The court nowhere uses the term "supervisory" or any similar language to qualify "responsibility."

Moreover, the district court's interpretation of "responsibility" is consistent with the reasoning that guided the Supreme Court of New Jersey in *In re Advisory Opinion*. That court based its interpretation of DR 9–101(B) on a rigorous application of Canon 9's admonition that "a lawyer should avoid even the appearance of professional impropriety." *See In re Advisory Opinion, supra*, 390 A.2d at 121. Elsewhere, the court has explained that in applying Canon 9, "We must view the conduct as an informed and concerned private citizen and judge whether the reputation of the Bar would be lowered if the conduct were permitted." *In re Opinion no. 415, New Jersey Supreme Court Advisory Committee on Professional Ethics*, 81 N.J. 318, 407 A.2d 1197, 1200 (1979). If the court's hypothetical private citizen were to view the present case, he would see that Horn had some involvement in almost all criminal tax cases in the U.S. Attorney's office, including Strike Force cases. The citizen would see little to assure himself that Horn had not utilized his position to obtain confidential information or to serve conflicting loyalties. Therefore, we see no error in the district court's conclusion that the Supreme Court of New Jersey would prohibit Horn's representation of appellant.

Appellant argues that Horn's appearance on his behalf is permitted by applicable federal law. He cites 18 U.S.C.A. § 207 (Supp.1980), which defines certain types of representation by former employees of the federal government as conflicts of interest. It appears not to prohibit Horn's appearance. However, § 207 is not a comprehensive code of professional conduct; it is a criminal statute. We find nothing in the statute that prevents courts and bar associations from holding former employees of the federal government to standards more demanding than the minimal requirements of the criminal law. Appellant also cites 28 C.F.R. § 45.735–7 (1979), which paraphrases the predecessor statute to 18 U.S.C.A. § 207 (Supp.1980) and applies its proscriptions to former employees of the Department of Justice. These regulations make plain that the former employee is not free to disregard other, more demanding standards of professional conduct. 28 C.F.R. § 45.735–1(b) (1979).

Appellant further argues that the district court failed to strike a proper balance between the policies that are promoted by the disqualification of Horn and the policies that are impaired by such action. Because these arguments concern the appropriateness of the sanction of disqualification, we may reverse the district court only for an abuse of discretion.

The district court, like the Supreme Court of New Jersey, expressed concern for avoiding the appearance of professional impropriety, and found that this principle required Horn's disqualification. In the circumstances of this case, that conclusion was reasonable. As we have noted, an informed and concerned private citizen could conclude that Horn's appearance on behalf of appellant involved a conflict of interest with his former responsibilities as an assistant U.S. attorney. Public confidence in the government's prosecutors is essential, but it may be lost if former prosecutors assume private employment that appears to involve

conflicts of interests.[2] A special concern for avoiding the appearance of impropriety in this case is justified by the fact that the Zuckerman firm had publicly announced that Horn had been "Chief of the Criminal Tax Fraud Unit within the United States Attorney's Office."

Appellant argues that the district court failed to give due consideration to countervailing policies. He argues that he should be able to retain the counsel of his choice. Although this right deserves respect, it is not absolute. *Kramer v. Scientific Control Corp.*, 534 F.2d 1085, 1093 (3d Cir.), *cert. denied*, 429 U.S. 830, 97 S.Ct. 90, 50 L.Ed.2d 94 (1976). Appellant has not pointed to any particular harm that might result from his need to retain new counsel. He also contends that disqualification in the circumstances of this case imposes excessive burdens on employment in the U.S. Attorney's office. The record does not support this contention. The United States Attorney for the District of New Jersey has maintained for several years a policy that prohibits a former assistant from handling any case that was pending in the office during the assistant's employment, even if he had no participation, knowledge, responsibility, or any other form of connection with the case. The First Assistant U.S. Attorney testified that the policy had neither hindered the office's ability to recruit assistants nor excessively restricted the practice of former assistants. Appellant did not attempt to contradict this testimony. The district court did not adopt the U.S. Attorney's policy but applied an interpretation of DR 9–101(B) that was substantially less restrictive. If the U.S. Attorney's policy is not too burdensome on former assistants, then the district court's ruling also should not be too burdensome. Therefore, we find no basis for concluding that the district court abused its discretion in weighing these policy considerations.

Appellant's basic argument is that DR 9–101(B) permits disqualification of a former public employee only in matters in which he had a direct and substantial personal involvement while a public employee. This reading of the disciplinary rule may be the prevailing view. *See Woods v. Covington County Bank*, 537 F.2d 804 (5th Cir. 1976); *United States v. Standard Oil Co.*, 136 F.Supp. 345 (S.D.N.Y.1955); ABA Comm. on Ethics and Professional Responsibility, Formal Opinion 342, at 9 (1975). Whatever merit that reading might have, we have found no error in the district court's refusal to follow it in this case. The governing interpretation of DR 9–101(B), derived from New Jersey law, imposes a more restrictive standard of professional conduct, and the district court acted within its sound discretion in using a disqualification order to enforce that standard.

### V.

We now shall consider appellant's objections to the district court's disqualification of the entire Zuckerman firm, rather than just Horn. The proper scope of a disqualification order is a matter committed to the district court's discretion. *Akerly v. Red Barn System, Inc.*, 551 F.2d 539 (3d Cir. 1977).

Disqualifications under DR 9–101(B) ordinarily cover all of the partners of the implicated attorney. This measure is thought necessary to prevent any suspicion that the attorney has indirectly profited from a case in which he has a conflict of interests or has shared confidential information with a partner who has appeared in the case. *See Handelman v. Weiss*, 368 F.Supp. 258, 264 (S.D.N.Y.1973); *State v. Rizzo*, 69 N.J. 28, 350 A.2d 225 (1975). Appellant has offered nothing, either in the district court or in this court, that suggests that such suspicion would not arise in this case. In fact, even though the government explicitly moved and argued for the disqualification of the

---

**2.** The district court's opinion contains the following statement:

Nothing in this decision should be considered as reflecting any unethical behavior by Mr. Horn or his firm. To the contrary, Mr. Horn

and his firm are held in the highest esteem by this court, both ethically and professionally. Nothing in our opinion should be read as contradicting this statement.

entire firm, appellant did not contend before the district court that the disqualification order should not encompass Horn's partners. On this record, we cannot conclude that the district court abused its discretion in disqualifying the entire Zuckerman firm.

Appellant asserts that the district court could have avoided disqualification of the firm by ordering the establishment of a mechanism to screen Horn from sharing profits and information on the Miller case with his partners. The ABA has suggested the use of such screening mechanisms in DR 9–101(B) cases, ABA Comm. on Ethics and Professional Responsibility, Formal Opinion 342, at 10–12 (1975), but courts have yet to follow the suggestion.

We need not decide whether a screening mechanism might in some case allow a law firm to avoid a complete disqualification under DR 9–101(B), because appellant has not adequately presented us with the issue of whether a screening mechanism would be feasible in this case. Appellant never requested the district court to consider the establishment of a screening mechanism. The district court considered the possibility on its own initiative and rejected it. No record was compiled. We have nothing to tell us how a screening mechanism would operate in this case and whether it would be adequate to prevent an appearance of impropriety from arising. *Cf. Armstrong v. McAlpin*, 606 F.2d 28 (2d Cir.), *rehearing in banc granted*, 625 F.2d 433 (2d Cir. 1979) (screening mechanism found inappropriate in the circumstances of the particular case). These are not matters that should be investigated for the first time in the court of appeals. Because appellant did not raise the issue of a screening mechanism in the district court and no record was compiled, we shall not review the district court's refusal to order one.

## VI.

The order of the district court will be affirmed.