NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 13-4623
_____

AGUEDA SARANTE DE LA CRUZ, as Personal Representative for the Estate of Jose
De La Cruz

v.

VIRGIN ISLANDS WATER AND POWER AUTHORITY

v.

MARCO A. BLACKMAN

*LEE J. ROHN; LEE J. ROHN & ASSOCIATES, LLC
Appellants

*(Pursuant to Fed. R. App. P. 12(a))

_____

No. 13-4673
_____

AGUEDA SARANTE DE LA CRUZ, as Personal Representative for the Estate of Jose
De La Cruz,
Appellant

v.

VIRGIN ISLANDS WATER AND POWER AUTHORITY

v.

MARCO A. BLACKMAN

Appeal from the District Court of the Virgin Islands
Division of St. Thomas / St. Croix
(No. 1-07-cv-00009)
District Judge: Hon. Anne E. Thompson

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 8, 2014

Before: CHAGARES, JORDAN, and SHWARTZ, <u>Circuit Judges</u>.

(Filed: December 30, 2014)

_____

OPINION[*]
_____

CHAGARES, <u>Circuit Judge</u>.

Aqueda De La Cruz appeals certain pre-trial and evidentiary rulings made in her personal injury suit against the Virgin Islands Water and Power Authority. Lee J. Rohn and Associates, LLC appeals an order disqualifying it as counsel for De La Cruz. For the reasons that follow, we will affirm the District Court in all respects.

I.

We write solely for the parties and therefore recite only the facts that are necessary to our disposition. On the morning of December 4, 2006, Jose De La Cruz was on the roof of Mutual Homes Building 17 in St. Croix. A witness, Olivia Benjamin, testified De La Cruz was painting the side of the building when his painting pole struck an electrical wire. Appendix ("App.") 1441. Olivia Benjamin saw a flash of light and watched De La

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

Cruz fall prone on the roof. App. 1441. De La Cruz's co-workers soon found him unconscious and badly electrocuted. App. 1519.

One month later, De La Cruz filed suit against the Virgin Islands Water and Power Authority ("WAPA"). His first attorney was Lee J. Rohn, whose law firm is Lee J. Rohn and Associates, LLC (hereinafter, "Rohn").[1] App. 179. WAPA moved to disqualify Rohn on the grounds that one of Rohn's associates had previously performed legal work for WAPA on another personal injury case involving contact with electrical infrastructure — Santos de Jesus v. Virgin Islands Water and Power Authority, No. 10-CV-205. App. 423. The associate, Tab Ellison, conducted research related to motions and "strategy issues regarding litigation against WAPA." App. 102-03. As part of that assignment, Ellison's supervisors told him about the De La Cruz case, App. 70, and asked him to evaluate a memorandum issued in De La Cruz, App. 72. Ellison had complete access to the de Jesus case file and the confidential WAPA information contained therein. App. 99-100. Although Ellison's supervisor could not say whether Ellison reviewed the full file, and Ellison denied having done so, App. 99, his supervisor testified that she communicated to Ellison what she considered to be WAPA's confidential information. App. 101-02.

Finding that an attorney-client relationship had existed between Ellison and WAPA and that de Jesus was substantially related to De La Cruz, the Magistrate Judge granted the motion to disqualify Ellison and Rohn pursuant to Model Rules of

---

[1] At the time, Lee Rohn's firm was the Law Offices of Rohn & Cameron, LLC.

Professional Conduct 1.9 and 1.10. App. 30-31. On appeal to the District Court, Rohn argued that the two cases were not substantially related because de Jesus involved electrocution via a faulty guy wire rather than an electrical wire. The District Court found the difference insignificant for purposes of Model Rule 1.9 and denied Rohn's appeal. App. 17.

Prior to trial, WAPA retained an expert, Dr. James Nelson, to testify that De La Cruz suffered from neurosyphilis, which might be responsible for some of De La Cruz's negative symptoms following the accident. App. 1118. De La Cruz moved to preclude Nelson's opinion on the grounds that it was unfairly prejudicial and not reliable under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). See App. 1018-31. The District Court denied De La Cruz's motion. De La Cruz died in May 2013 and Aqueda De La Cruz, the deceased's widow, substituted as the named plaintiff. App. 1174. An autopsy revealed no evidence of neurosyphilis. App. 2017. Aqueda De La Cruz (for simplicity, this Opinion will continue to refer to the plaintiff-appellant as "De La Cruz") renewed the motion to preclude. App. 1177. The Court again denied the motion. App. 1358.

On the eve of trial, De La Cruz moved to disqualify WAPA's counsel on the basis that it had hired an investigator, Antonio Messer, who had previously worked for De La Cruz's original counsel. App. 1341. WAPA's counsel argued that it only hired Messer to serve process and assist in selecting a jury and that Messer had never seen the case file. App. 1341. Messer testified that although he had worked for Rohn while this matter was pending, his only involvement was serving subpoenas, locating a witness, and

4

occasionally driving De La Cruz to Rohn's office. App. 1344-45. The District Court denied De La Cruz's motion to disqualify but advised WAPA's counsel to release Messer from further involvement in the case. App. 1357.

One major issue at trial was how De La Cruz held his painting pole at the time of the accident. Olivia Benjamin testified that De La Cruz held the painting pole with one end moving toward the many electrical wires near the building. App. 1436, 1441. De La Cruz's employer, Marco Blackman, added that he had previously observed De La Cruz failing to take proper care around electrical wires. App. 2302. De La Cruz's co-worker Adrian Benjamin heard Blackman give De La Cruz multiple warnings about electrocution. App. 2274. However, De La Cruz's supervisor, Julian Lansiquot, testified that he had never seen De La Cruz paint in an unsafe manner. App. 1513.

De La Cruz sought to introduce three photographs of how rooftop painters typically paint the sides of buildings and ask Lansiquot to demonstrate how such painting worked. App. 1493-1500. The District Court refused to admit the photographs or allow Lansiquot's testimony because the photographs did not depict and Lansiquot did not observe De La Cruz painting on the day of the accident. App. 1498, 1512.

A second major issue was the positioning of the electrical wires. One of the electrical poles supporting the wires was leaning dangerously close to the building. See, e.g., App. 1440, 1583. Vaughn Hendricks, WAPA's Safety Manager, testified that the wires were closer to the building than regulations permitted and any WAPA employee who saw the leaning pole should have reported it. App. 1616, 1620-21. Irving Francis, WAPA's line superintendent, testified that WAPA linesmen are instructed that when they

5

respond to a trouble call, they should survey the area for potential unreported problems as well. App. 1888. He added that linesmen responding to a specific call on October 19, 2006 would have driven right past the leaning pole by Mutual Homes Building 17. App. 1895.

De La Cruz sought to introduce records of WAPA visits to Mutual Homes in the five years prior to the accident. App. 1626-30. The District Court rejected the records as cumulative, App. 1629-30, but permitted De La Cruz's counsel to reference them in his closing argument. App. 2456-23, 2456-24.

De La Cruz also sought to introduce a portion of Adrian Benjamin's deposition testimony concerning the electrical pole:

Q: Okay. And you lived in Mutual Homes your whole life, is that correct?
A: (Witness nods head.)
Q: Yes?
A: Yes.
Q: Do you remember seeing that pole leaning before the day of this accident?
A: Yeah.
Q: And was that pole leaning like that since at least after Hurricane Hugo?
A: Yeah.

App. 2845. WAPA's counsel did not object to the form of the question during the deposition, but the District Court chose to exclude the deposition testimony because the questions were "not asked in a straightforward way." App. 2456-27, 2456-28.

The jury found WAPA negligent but assigned 85% of the fault to De La Cruz. Under the Virgin Islands' contributory negligence rules, because De La Cruz was more than 50% at fault, he recovered nothing. App. 5-6. The District Court entered judgment for WAPA. De La Cruz timely appealed.

6

II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction over both De La Cruz's and Rohn's appeals pursuant to 48 U.S.C. § 1612 and 28 U.S.C. § 1291 and § 1294(3).

We review orders disqualifying counsel in two steps. "First, we exercise plenary review to determine whether the district court's disqualification was arbitrary." United States v. Stewart, 185 F.3d 112, 120 (3d Cir. 1999). Second, "[i]f we find the district court's decision was not arbitrary, we then determine whether the court abused its discretion in disqualifying the attorneys." Id. "A court abuses its discretion in imposing sanctions when it 'base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Adams v. Ford Motor Co., 653 F.3d 299, 304 (3d Cir. 2011). "It is the responsibility of an appellate court to accept the ultimate factual determinations of the fact-finder unless that determination either (1) is completely devoid of minimum evidentiary support . . . or (2) bears no rational relationship to the supportive evidentiary data." Krasnov v. Dinan, 465 F.2d 1298, 1302 (3d Cir. 1972).

We review a district court's decision to admit or exclude evidence for abuse of discretion. Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408, 412 (3d Cir. 2002).[2] We will affirm a District Court's evidentiary ruling, even if it is erroneous, "if it is highly

---

[2] Our review of a court's interpretation of the Federal Rules of Evidence, however, is plenary. Hirst v. Inverness Hotel Corp., 544 F.3d 221, 225 (3d Cir. 2008).

probable that the error[ ] did not affect the outcome of the case." McQueeney v. Wilmington Trust Co., 779 F.2d 916, 917 (3d Cir. 1985).

III.

A.

Rohn argues that its disqualification was an abuse of discretion. Specifically, Rohn contends that WAPA failed to establish a violation of the Model Rules of Professional Conduct, and both the Magistrate Judge and the District Court gave insufficient weight to De La Cruz's interest in having his choice of counsel. We disagree.

"The district court's power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before it." United States v. Miller, 624 F.2d 1198, 1201 (3d Cir. 1980). "As a general rule, the exercise of this authority is committed to the sound discretion of the district court and will be overturned on appeal only for an abuse of this discretion." Id.

Under the District of the Virgin Islands' Local Rule of Civil Procedure 83.2(a)(1), all attorneys practicing in the Virgin Islands must comply with the ABA Model Rules of Professional Conduct. Model Rule 1.9 forbids an attorney who has represented a client on a matter to represent another person in "the same or a 'substantially related' matter in which that person's interest are materially adverse to the interests of the former client unless the former client gives informed consent." Matters are "substantially related" when "(1) the current matter involves the work the lawyer performed for the former client; or (2) there is a substantial risk that representation of the present client will

8

involve the use of information acquired in the course of representing the former client, unless that information has become generally known." Restatement (Third) of Law Governing Lawyers § 132 (2000); see also Model Rule of Professional Conduct 1.9 cmt. 3 ("Matters are 'substantially related' for purposes of this Rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter."). Model Rule 1.10 explains when one lawyer's conflict of interest under Rule 1.9 should be imputed to other members of his or her firm.

Rohn asserts, as it did before the District Court, that de Jesus and De La Cruz are not substantially related because the former involved a faulty guy wire rather than an electrical wire. But we agree with the District Court that the distinction between a guy wire and an electrical line is unimportant here: WAPA's maintenance and inspection of its electrical infrastructure were in issue in both cases. See App. 17. The cases may not have involved the same plaintiffs, the same locations, or the same source of electrocution, but they were nevertheless similar enough to create a genuine risk that Ellison obtained confidential information from WAPA during his work on the de Jesus matter. Rohn has not shown that the District Court committed a clear error in finding that Ellison worked for WAPA on a case substantially related to De La Cruz.

Rohn argues that even if a conflict of interest existed, the District Court gave insufficient weight to De La Cruz's interest in retaining his choice of counsel and lawyers' interest in professional mobility when it ordered disqualification. We have held

9

that a District Court deciding a disqualification motion "should consider the ends that the [applicable] disciplinary rule is designed to serve and any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions." Miller, 624 F.3d at 1201. But we have never accorded these countervailing policies paramount weight. See id. at 1203 (holding that the risk of an apparent conflict of interest outweighed a party's interest in retaining the counsel of his choice). Both the Magistrate Judge and the District Court made findings that disqualifying Rohn posed no great risk to attorney mobility because appropriate screening procedures could have negated the problem. App. 19. We discern no abuse of discretion in the District Court's conclusion that the risk of prejudice, the need for integrity in judicial proceedings, and WAPA's interest in the loyalty of an attorney who had once accepted its confidence outweighed De La Cruz's interest in retaining his attorney of choice. In sum, the District Court did not abuse its discretion in affirming the Magistrate Judge's order disqualifying Rohn.

B.

De La Cruz argues that the District Court's decision not to disqualify WAPA's counsel was arbitrary, because the District Court failed to develop a proper factual record, and an abuse of discretion, because the evidence showed a conflict of interest capable of threatening the integrity of the trial. We disagree.

"As long as the court makes a reasoned determination on the basis of a fully prepared record, its decision will not be deemed arbitrary." United States v. Voigt, 89 F.3d 1050, 1075 (3d Cir. 1996) (citation omitted). There is no requirement that a court

10

hold a separate evidentiary hearing and make detailed factual findings before denying a party his or her chosen counsel. Id. at 1075. Nonetheless, the District Court heard extensive argument from both parties and heard testimony from Messer before making its decision. The mere fact that the District Court cut off Attorney Rohn, when she tried to interrupt argument, does not render the District Court's decision arbitrary.

Under Model Rule of Professional Conduct 5.3, a supervising attorney must ensure that the conduct of any non-lawyers she employs is compatible with the professional obligations of the lawyer. When a non-lawyer is accused of "side switching," a court must first determine whether the non-lawyer learned confidential information from his previous employer. Lamb v. Pralex Corp., 333 F. Supp. 2d 361, 364 (D.V.I. 2004). If the non-lawyer learned confidential information from his or her previous employer, "a rebuttable presumption arises that the information will be disclosed to the new employer." Id. The burden then shifts to the firm opposing disqualification to show that no disclosure of confidential information has occurred. Evidence of formal screening mechanisms can be helpful in meeting this burden. Id. In Lamb, evidence that an employer (coincidentally, Attorney Rohn) had forbidden employees to speak to or near a new paralegal about cases on which she had a conflict of interest and had blocked the paralegal's access to the relevant case files was sufficient to rebut the presumption of contamination. Id. at 366.

Here, we do not need to consider screening mechanisms, or lack thereof, because there was no evidence that Messer acquired confidential information during his employment with Rohn. Messer had no access to the case file. He served subpoenas and

11

occasionally drove De La Cruz to Rohn's office. App. 1344-45. With no evidence that Messer possessed confidential information, no presumption arose that Messer shared such information with WAPA's counsel. The District Court did not abuse its discretion in denying the motion to disqualify.

IV.

A.

De La Cruz argues that the District Court erred in refusing to admit photographs of workers painting the side of a building and a white fascia board, Lansiquot's demonstration of how he had seen Cruz paint in the past, and records of the many "trouble calls" WAPA employees responded to at Mutual Homes.

Under Federal Rule of Evidence 403, a district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[3] Demonstrative photographs sometimes fall subject to this ban when they contain significant variations from the date, scene, or subject in issue. See, e.g., Fusco v. Gen. Motors Corp., 11 F.3d 259, 263-64 (3d Cir. 1993) (explaining that staged recreations must be analyzed carefully for their resemblance to the original events because jurors may not fully appreciate variations in the surrounding conditions); King v. Ford Motor Co., 597 F.2d 436, 445 (5th Cir. 1979)

---

[3] Even where a district court does not invoke Rule 403, "the trial judge's balancing [of maximum probative value versus likely prejudicial effect] will be subsumed in his ruling." United States v. Long, 574 F.2d 761, 766 (3d Cir. 1978).

12

(affirming district court's exclusion of photographs that did not depict the chassis in issue as they appeared at the time of the accident).

The photographs in question did not depict De La Cruz. They depicted different painters, painting a different building, on a different day. Lansiquot did not observe De La Cruz painting on the day of the accident. App. 1512. Offered "so the jurors understand what type of work [the painters were] doing," App. 1499, any relevance the photographs or demonstration might have possessed was far outweighed by their tendency to confuse or mislead the jury. The District Court did not abuse its discretion in refusing to admit the photographs and demonstration.[4]

Nor did the District Court err in limiting De La Cruz's use of WAPA "trouble call" records. De La Cruz elicited the testimony of Vaughn Hendricks that any WAPA employee who saw the leaning pole should have reported it. App. 1616, 1620-21. The records would have shown a large number of WAPA employees passing the leaning pole. But they would not show that the WAPA employees actually saw the pole. And for the simpler proposition that WAPA employees had visited or driven past Mutual Homes and should have noticed the leaning pole, De La Cruz already had the admissions of Irving

---

[4] De La Cruz now asserts that the photographs and demonstration could have been used to impeach Olivia Benjamin's testimony by showing the difficulty of painting in the posture her testimony ascribed to De La Cruz. This was not the argument De La Cruz made at trial, see App. 1497-99, and we will not consider it for the first time on appeal. See Tri-M Grp., LLC v. Sharp, 638 F.3d 406, 416 (3d Cir. 2011) ("It is axiomatic that arguments asserted for the first time on appeal are deemed to be waived and consequently are not susceptible to review in this Court absent exceptional circumstances."). Moreover, the District Court expressly gave De La Cruz the opportunity to ask Olivia Benjamin whether these photographs accurately depicted the way she saw De La Cruz painting on December 4, 2006. De La Cruz declined to do so. See App. 1431–32.

13

Francis and Vaughn Hendricks. See, e.g., App. 1893-94, App. 1640. Under the circumstances, the District Court did not abuse its discretion in rejecting the records as needlessly cumulative.

B.

De La Cruz also argues that the District Court erred in refusing to admit the following portion of Adrian Benjamin's deposition transcript on the grounds that counsel's question to the deponent was not asked in a straightforward way:

Q: Okay. And you lived in Mutual Homes your whole life, is that correct?
A: (Witness nods head.)
Q: Yes?
A: Yes.
Q: Do you remember seeing that pole leaning before the day of this accident?
A: Yeah.
Q: And was that pole leaning like that since at least after Hurricane Hugo?
A: Yeah.

App. 2845. De La Cruz notes that under Federal Rule of Civil Procedure 32(d)(3)(B), an objection to the form of the question is waived if it is not made during the deposition, and WAPA's counsel made no objection at the deposition to the question or answer De La Cruz sought to introduce.

Any possible error in excluding this deposition testimony was harmless given the other testimony concerning the length of time the pole had been leaning prior to the date of the accident.

C.

Finally, De La Cruz argues that the District Court erred in permitting Dr. Nelson to offer his expert opinion that De La Cruz suffered from neurosyphilis. At the very

14

least, De La Cruz insists, the District Court was required to hold a <u>Daubert</u> hearing on De La Cruz's renewed motion before allowing Dr. Nelson to testify.

The District Court received several rounds of motions — totaling hundreds of pages — regarding Dr. Nelson's opinion. <u>See</u> App. 114, 114-1-18, 1018-1160, 1177-1230. The record showed that Dr. Nelson was a practiced neurologist and doctor of internal medicine and that he had treated over 300 cases of syphilis. Prior to formulating his opinion, Dr. Nelson examined De La Cruz and reviewed his medical records as well as various laboratory results. App. 1114. Confronted with an autopsy result that showed no signs of neurosyphilis, Dr. Nelson testified that the battery of antibiotics De La Cruz received prior to his death might have masked the symptoms of or even treated De La Cruz's syphilis. App. 2389-90.

Federal Rule of Evidence 702 governs the use of expert testimony in federal courts. Experts must be qualified to offer opinions, and their testimony must be reliable. "Before an expert witness may offer an opinion . . ., [the expert] must first be qualified by virtue of specialized expertise." <u>Elcock v. Kmart Corp.</u>, 233 F.3d 734, 741 (3d Cir. 2000). We have emphasized that the "specialized expertise" requirement is a liberal one: "a broad range of knowledge, skills, and training [may] qualify an expert as such." <u>In re Paoli R.R. Yard PCB Litig.</u>, 35 F.3d 717, 741 (3d Cir. 1994). It is not the trial court's responsibility to determine the best possible training for an expert and restrict testimony to those who possess it. <u>Id.</u>

Even a qualified expert may only testify "so long as the process or technique the expert used in formulating [her] opinion is reliable." <u>Id.</u> at 742 (citing <u>Daubert v. Merrell</u>

15

Dow Pharm., Inc., 509 U.S. 579, 587 (1993)). An expert's opinion must be "based on the methods and procedures of science rather than on subjective belief or unsupported speculation." Elcock, 233 F.3d at 745 (quotation marks and citation omitted). We have held that courts should consider the following, non-exclusive factors in evaluating an expert's methodology:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

Id. at 745-46. Imposing as this array of factors may appear, "[t]he grounds for [an] expert's opinion merely have to be good, they do not have to be perfect." Paoli, 35 F.3d at 744. "The test of admissibility is not whether a particular scientific opinion has the best foundation, or even whether the opinion is supported by the best methodology or unassailable research." In re TMI Litig., 193 F.3d 613, 665 (3d Cir. 1999). "Rather, the test is whether the particular opinion is based on valid reasoning and reliable methodology." Id.

We have also stressed the importance of in limine hearings in making the reliability determination required under Rule 702. Padillas v. Stork-Gamco, Inc., 186 F.3d 412, 417 (3d Cir. 1999). In cases where there is a scant record supporting an expert's proffered opinion, a hearing may even be necessary. Id. at 417. Nonetheless, where the evidentiary record pertaining to an expert is extensive, a court does not abuse its discretion in ruling on a Daubert challenge without a separate hearing. Oddi v. Ford

16

Motor Co., 234 F.3d 136, 153 (3d Cir. 2000) (holding that a record consisting of a preliminary report, an amended report, an affidavit prepared to meet the adversary's Daubert challenge, and multiple depositions was sufficient to obviate the need for a Daubert hearing).

Here, De La Cruz has failed to identify a reversible error in the District Court's application of Rule 702 to Dr. Nelson.[5]  Whatever weaknesses De La Cruz's expert might have identified in Dr. Nelson's methods, particularly in light of autopsy results showing no sign of neurosyphilis, they were sufficiently grounded in science to be offered in court and then attacked on cross-examination.  The evidentiary record, like that in Oddi, was sufficiently robust to justify ruling without a Daubert hearing on the second motion.  In sum, the District Court did not abuse its discretion in permitting Dr. Nelson to testify.

V.

For the foregoing reasons, we will affirm the District Court's May 8, 2012 order affirming the disqualification of Lee J. Rohn and Associates, LLC, and we will affirm the District Court's November 27, 2013 judgment in favor of the Virgin Islands Water and Power Authority.

---

[5] Nor did the District Court err in its Rule 403 analysis.  Any prejudice De La Cruz might have suffered from Dr. Nelson's opinion — if it was credited by the jury — did not substantially outweigh the probative value of such testimony on the issue of damages.

17