**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2496
_____

In re: MAXUS ENERGY CORPORATION, Debtor

THE MAXUS LIQUIDATING TRUST

v.

YPF S.A.; YPF INTERNATIONAL S.A.; YPF HOLDINGS,
INC.; CLH HOLDINGS, INC.; REPSOL S.A.; REPSOL
EXPLORACION, S.A.; REPSOL USA HOLDINGS, CORP.;
REPSOL E&P USA. INC.; REPSOL OFFSHORE E&P
USA, INC.; REPSOL E&P T&T LIMITED; REPSOL
SERVICES COMPANY; JESSICA C. LAURIA, formerly
Jessica C. Boelter


YPF S.A.; YPF International S.A.; YPF Holdings, Inc.;
CLH Holdings, Inc.,
Appellants
_____

On Appeal from the United States Bankruptcy Court
for the District of Delaware
(No. 18-BK-50489)
Bankruptcy Judge: Honorable Christopher S. Sontchi

_____

Argued: May 3, 2022

Before: GREENAWAY, JR., PORTER, and PHIPPS,
*Circuit Judges*.

(Filed: September 9, 2022)
_____

Victor L. Hou **[ARGUED]**
Ari D. MacKinnon
Jeffrey A. Rosenthal
Cleary Gottlieb Steen & Hamilton
One Liberty Plaza
New York, NY 10006

Adam G. Landis
Matthew B. McGuire
Landis Rath & Cobb
919 Market Street
Suite 1800, P.O. Box 2087
Wilmington, DE 19801

     *Counsel for Appellants CLH Holdings Inc., YPF*
     *Holdings Inc., YPF International S.A., and YPF S.A.*

Rosemary J. Piergiovanni
Farnan
919 North Market Street
12th Floor
Wilmington, DE 19801

Catherine E. Stetson **[ARGUED]**
Johannah C. Walker
Hogan Lovells US
555 Thirteenth Street, N.W.
Columbia Square
Washington, DC 20004

*Counsel for Appellee Maxus Liquidating Trust*

_____

OPINION OF THE COURT

_____

PORTER, *Circuit Judge*.

Jessica Lauria, née Boelter ("Boelter"), moved from a law firm representing one party in a bankruptcy dispute to the firm representing the opposing party. Boelter's then fiancé also worked for the new firm. The American Bar Association's Model Rules of Professional Conduct ("Model Rules"), incorporated by the Bankruptcy Court's local rules, imputes Boelter's conflict to her new firm unless she, among other things, "is timely screened from any participation in the matter and is apportioned no part of the fee therefrom." Model Rules of Pro. Conduct r. 1.10(a)(2) (Am. Bar Ass'n, 2020). The new firm, White & Case LLP, timely screened Boelter. But Boelter's former client moved to disqualify White & Case, arguing that a screen was not enough. The Bankruptcy Court denied the motion, holding White & Case's screen was sufficient to prevent Boelter's conflict from being imputed to the entire firm. Because the Model Rules state that a timely

3

screen, together with certain other requirements, prevents conflict imputation, we will affirm the Bankruptcy Court.[1]

**I**

This case stems from the Chapter 11 bankruptcy of Maxus Energy Corporation ("Maxus"). In 2018, Maxus Liquidating Trust ("Trust") sued Maxus's parents, YPF S.A., YPF International S.A., YPF Holdings, Inc., and CLH Holdings, Inc. (collectively, "YPF"), asserting fraudulent conveyance and alter ego claims.

White & Case represented the Trust from the start. Sidley Austin LLP represents YPF. Cleary Gottlieb Steen & Hamilton LLP represents YPF on issues related to the Motion to Disqualify and this appeal.

Boelter was a partner in Sidley's restructuring group. She participated in Sidley's initial pitch to represent YPF. She helped negotiate the engagement letter, worked with others on certain motions, was admitted pro hac vice in the proceeding, was copied on email correspondence with YPF, attended

---

[1] As other courts have done, the Bankruptcy Court incorporated an external set of disqualification standards, in this case the Model Rules. *See* Bankr. D. Del. R. 9010-1(f); *cf., e.g.*, *United States v. Miller*, 624 F.2d 1198, 1200 (3d Cir. 1980). Without a challenge to that incorporation, our analysis proceeds under those rules. Although a court may still use its inherent authority to disqualify counsel or a firm for reasons beyond those in the incorporated rules, we are satisfied that in these circumstances the Model Rules suffice and no need exists to invoke inherent authority to address additional considerations.

4

several meetings, and was considered by YPF executives as "an integral part" of its legal team. J.A. 54. She billed a total 300 hours to the YPF representation, mostly early on.

Thomas Lauria ("Lauria") is a partner in White & Case's restructuring group. Lauria did not record any time related to the case. He was listed as counsel for one of Maxus's creditors during the Chapter 11 proceedings, but he never entered an appearance. Boelter started dating Lauria in 2017, before she pitched Sidley to YPF. In late 2018 Boelter and Lauria's relationship became exclusive, and they lived together starting in 2019. Sidley knew of the relationship, but it is unclear from the record whether YPF knew.

While engaged to marry Lauria, Boelter moved to his firm, White & Case. When she did so, White & Case followed the Model Rules. From the start, Boelter went through a standard conflict-screening process. White & Case implemented an ethical wall, which both parties agree qualifies as a screen, beginning on Boelter's first day; obtained her acknowledgment that she would comply with it; and periodically certified her compliance.[2] White & Case did not give any portion of its fee from the YPF adversary proceeding to Boelter. White & Case gave YPF written notice of Boelter's employment the day she began with the firm. The letter explained the nature of White & Case's screen and included a

---

[2] White & Case used both an inclusionary and an exclusionary screen. The inclusionary screen prohibits all attorneys and staff from involvement in the YPF representation if not assigned to it. Those excluded attorneys and staff cannot access records or other information related to the representation. The exclusionary screen prevents Boelter, specifically, from involvement in the YPF representation in any way.

statement of the firm's and of Boelter's compliance with the Model Rules. White & Case also stated that review may be available before a tribunal. The firm agreed to respond promptly to any written inquiries or objections about the screening procedures. In fact, it provided additional information to YPF attorneys in their later discussions. Boelter says she never breached the screen.

YPF never thought any screen could be good enough. So it moved to disqualify White & Case from representing the Trust. The Bankruptcy Court denied the motion after applying a multifactored test, holding that exceptional circumstances did not exist to impute Boelter's conflict to the entire firm despite a screen. YPF then moved for direct appeal, which the Bankruptcy Court granted. This Court authorized YPF's appeal.

## II

We have jurisdiction to hear certified, direct appeals "from final judgments, orders, and decrees," as well as certain "interlocutory orders and decrees," from bankruptcy courts. 28 U.S.C. §§ 158(a), 158(d)(2)(A). As relevant here, our jurisdiction over a non-final bankruptcy court order has two prerequisites: The bankruptcy court must certify that its order "involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme

Court of the United States," and the court of appeals must "authorize[] the direct appeal." *Id.* § 158(d)(2)(A).[3]

The Bankruptcy Court certified two of the six issues YPF requested. And we granted permission to appeal on those two issues plus one other. But it does not matter which issues the Bankruptcy Court certified or we authorized. That is because we will "treat certified questions under 28 U.S.C. § 158(d)(2)(A) essentially as we treat certified questions from district courts under 28 U.S.C. § 1292(b)." *In re Franchise Servs. of N. Am., Inc.*, 891 F.3d 198, 206 (5th Cir. 2018). We will do so because "appellate jurisdiction applies to the *order* certified to the court of appeals, and is not tied to the particular question formulated by the district court." *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 205 (1996). Here, too, section 158(d)(2)(A) requires the lower court to certify a "judgment, order, or decree," not a specific issue, for appeal. Because all of the requirements of section 158(d)(2)(A) are met here, we have jurisdiction to review the entire order subject to this appeal.

**III**

The Bankruptcy Court for the District of Delaware incorporated the Model Rules in its local rules governing professional conduct. *See Int'l Bus. Mach. v. Levin*, 579 F.2d 271, 279 n.2 (3d Cir. 1978) ("[T]he conduct of practitioners

---

[3] The Bankruptcy Court could also certify that "the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions" or that "an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken." 28 U.S.C. § 158(d)(2)(A)(ii)–(iii).

before the federal courts must be governed by the rules of those courts."); *see also Law v. Siegel*, 571 U.S. 415, 420–21 (2014) (noting a bankruptcy court's inherent power to sanction).[4] We review the Bankruptcy Court's interpretation of the Model Rules as a question of law subject to de novo review. *United States v. Miller*, 624 F.2d 1198, 1201 (3d. Cir. 1980). We review the Bankruptcy Court's denial of disqualification as a sanction for abuse of discretion. *Id.* An abuse of discretion requires "a clearly erroneous finding of fact, an erroneous legal conclusion, or an improper application of law to fact." *In re Prosser*, 777 F.3d 154, 161 (3d Cir. 2015). In short, an abuse of discretion occurs "where no reasonable person would adopt" the lower court's view. *United States v. Foster*, 891 F.3d 93, 107 n.11 (3d Cir. 2018).

---

[4] The Bankruptcy Court's local rules state:

> Subject to such modifications as may be required or permitted by federal statute, court rule or decision, all attorneys admitted or authorized to practice before this Court, including attorneys admitted on motion or otherwise, shall also be governed by the Model Rules of Professional Conduct of the American Bar Association, as may be amended from time to time.

Bankr. D. Del. R. 9010-1(f). The Bankruptcy Court's local rules incorporated neither the Model Rule's commentary nor the American Bar Association's Formal Opinions interpreting the Model Rules, so both are nonbinding though we consider their persuasive value.

## A

To begin, Model Rule 1.9 prohibits a lawyer who has formerly represented a client in a matter from "represent[ing] another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client." Model Rules of Pro. Conduct r. 1.9. Both parties agree that Model Rule 1.9 prohibits Boelter from participating in White & Case's representation of the Trust, and both parties agree that she did not try to do so.

Model Rule 1.10(a), though, states that no lawyer at a firm "shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless":

> (i) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; (ii) written notice is promptly given to any affected former client to enable the former client to ascertain compliance with the provisions of this Rule . . . ; a statement of the firm's and of the screened lawyer's compliance with these Rules; a statement that review may be available before a tribunal; and an agreement by the firm to respond promptly to any written inquiries or objections by the former client about the screening procedures; and (iii) certifications of compliance with these Rules and with the screening procedures are provided to the former client by the screened lawyer and by a partner of the firm, at reasonable intervals upon the former

9

> client's written request and upon termination of
> the screening procedures.

Model Rules of Pro. Conduct r. 1.10(a)(2). The word "unless" signals a condition subsequent, so meeting the conditions of what follows relieves the preceding duty. Here, if a firm adheres to the conditions subsequent by screening the disqualified attorney, allocating to him no part of the fee from the conflicted representation, and following the other procedures in Model Rule 1.10(a)(2), the disqualified attorney's conflict cannot be imputed to the entire firm.

The Bankruptcy Court suggested an "exceptional circumstances" exception to Model Rule 1.10(a)(2). White & Case agreed with this approach. The Bankruptcy Court also analyzed the case under a multifactored test from an unpublished district court opinion. *See Enzo Life Scis., Inc. v. Adipogen Corp.*, No. 1:11-CV-00088-RGA, 2013 WL 6138791, at *3–4 (D. Del. Nov. 20, 2013).[5] YPF thought this multifactored test should be the rule. Both those approaches ignore the ordinary meaning of Model Rule 1.10(a)(2), which does not create an "exceptional circumstances" standard or incorporate a multifactored test with no basis in the rule's text.

---

[5] The test originated in a Pennsylvania Supreme Court dissenting opinion written before the Model Rules allowed screening to prevent conflict imputation, and it cites a different persuasive authority for each prong of the test. *See Maritrans GP Inc. v. Pepper, Hamilton & Scheetz,* 602 A.2d 1277, 1289 (Pa. 1992) (Nix, C.J., dissenting).

Whether a firm's conflict-of-interest procedures qualify as a "screen" under Model Rule 1.0(k) is a different question. Model Rule 1.0(k) defines a screen as "the isolation of a lawyer from any participation in a matter through the timely imposition of procedures within a firm that are reasonably adequate under the circumstances to protect information that the isolated lawyer is obligated to protect under these Rules or other law." Model Rules of Pro. Conduct r. 1.0(k). Courts must determine, based on the facts of each case, whether a firm's conflict-of-interest procedures qualify as an effective screen. Of course, disqualification remains an option if individual lawyers disregard the limitations imposed by an otherwise adequate screen.

YPF also argues that White & Case failed to adhere to Model Rule 1.10(a)(2)(i) because it did not ensure that Lauria, too, "is apportioned no part of the fee therefrom." But the rule directs that only the "disqualified lawyer" must be "apportioned no part of the fee" from the matter at issue. Model Rules of Pro. Conduct r. 1.10(a)(2)(i). Here, that means Boelter, not her spouse, must not receive proceeds of fees arising from the conflicted representation. The Bankruptcy Court correctly reached the same conclusion.

**B**

The Bankruptcy Court did not abuse its discretion when it held that White & Case complied with Model Rule 1.10(a)(2), and thus is not disqualified from representing the Trust. The Bankruptcy Court found that "White & Case implemented a thorough, robust ethical screen between Ms. Boelter and the YPF adversary proceeding and all related issues immediately upon Ms. Boelter joining the firm." J.A. 22. Indeed, YPF does not dispute that White & Case's conflict-of-

11

interest procedures are a screen. Boelter will not receive any part of the fees from White & Case's representation of YPF.[6] The Bankruptcy Court, moreover, found that White & Case gave YPF "prompt and exhaustive notice of the screening procedures, as well as repeated statements that White & Case and Ms. Boelter would comply with the screening procedures." J.A. 22. And White & Case said it would respond promptly to any inquiries from YPF about the screen, including inviting YPF to provide input. White & Case further stated that review may be available before a tribunal. The Bankruptcy Court thus reasonably concluded that "White & Case and Ms. Boelter complied to the letter with the applicable ethical rule." J.A. 23. So it did not abuse its discretion by refusing to disqualify White & Case.

*　　*　　*

For these reasons, we will affirm the Bankruptcy Court's order.

---

[6] In response to interrogatories, White & Case said that "partners at White & Case are not compensated based on specific case outcomes or earnings." J.A. 796. So neither Boelter nor Lauria will receive any compensation based on the firm's representation of the Trust. Although the local rules do not incorporate the Model Rules' comments, one comment persuasively says that Model Rule 1.10 "does not prohibit the screened lawyer from receiving a salary or partnership share established by prior independent agreement, but that lawyer may not receive compensation directly related to the matter in which the lawyer is disqualified." Model Rules of Pro. Conduct r. 1.10, cmt 8.

12